[No. 14408.  *En Banc.*  December 28, 1918.]

## HOTEL CECIL COMPANY, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*
## W. J. McLAUGHLIN, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS (405) — TORTS — OF POLICE OFFICERS — ABATEMENT OF NUISANCE—LIABILITY—PLEADING.  A complaint alleging that a city, "through its duly constituted officers, determined" that plaintiff's place of business constituted a nuisance, will not by inference be considered as alleging that any court of the city, or that the city council by ordinance, had determined the fact; in view of Rem. Code, § 287, as to the manner of pleading such a determination, and § 291, providing for the pleading of an ordinance by title and date of passage.

SAME (405).  A complaint alleging the abatement and destruction, by police officers acting as agents of the city of Seattle, of plaintiff's place of business as a nuisance, without alleging affirmative action by the city council, is subject to general demurrer, in that it fails to allege that the officers represented the city acting for itself in its corporate, as distinguished from its governmental (and nonliability) capacity; in view of Rem. Code, § 7507, subd. 31, including, in the enumeration of corporate powers, ·for which the city would be liable, the power to declare nuisances and abate the same, and of Seattle charter, art. 4, § 18, subd. 31, providing that the city may, by ordinance and not otherwise, declare nuisances and provide for the abatement of the same.

Appeal from a judgment of the superior court for King county, Ronald, J., entered September 6, 1917, upon sustaining a demurrer to the complaint, dismissing consolidated actions for damages.  Affirmed.

*Vanderveer & Cummings* and *Piles & Halverstadt,* for appellants.

*Hugh M. Caldwell, Thomas J. L. Kennedy,* and *Hugh R. Fullerton,* for respondent.

MITCHELL, J.—These two cases, practically identical as to the facts stated in the complaints, so far as the

law governing them is concerned, were consolidated in the trial court for the sake of convenience, and are so presented here. We use the case of the Hotel Cecil Company, a corporation, appellant.

According to the complaint, appellant, a private corporation, on December 8, 1916, was the owner of a restaurant and grill room in Seattle. The complaint states:

"On the 8th day of December, 1916, the defendant, through its duly constituted authorities, determined that said place of business of this plaintiff constituted a nuisance, and directed its summary abatement as such, and on said day, in pursuance of such purpose, and in the exercise of such power and authority as was vested in it by reason of the premises, the defendant, through a squad of its police officers, completely wrecked the plaintiff's said place of business, and utterly demolished all of the personal property of the plaintiff therein contained."

The complaint further states that appellant's place of business was not a nuisance nor conducted as such. It alleges damages, and that, within the time limited by the city charter, it filed a proper claim for damages, and that such claim was rejected by the respondent. The claim referred to and made a part of the complaint states as follows:

". . . On December 8th, 1916, at 1:30 o'clock a. m., a squad of police officers of the city of Seattle, purporting to act under and by virtue of some authority and warrant of law vested in them by said city, and acting under the express authority of the mayor of said city and the chief of police of said city and the other duly constituted authorities of said city, appeared at this claimant company's place of business aforesaid . . . Thereupon said police officers at said time and place . . . under and by virtue of some purported authority and warrant of law vested in them by said city, and under the express authority and war-

rant of law vested in them by said city, and under the express authority of the mayor, the chief of police and other duly constituted authorities of said city, proceeded to, and did, wreck, smash, break, tear out, completely demolish and destroy, or render utterly valueless, the property of this company hereinafter mentioned and described, and claimed by the said authorities to constitute a nuisance as aforesaid, to wit:''

There follows a description and value of the personal property destroyed and the allegation that the place was not a nuisance nor used as such.

A demurrer containing six different grounds was interposed by respondent. It was sustained. Appellant chose to stand on the complaint, and judgment of dismissal was entered, from which the appeal is taken. The case is argued here on the general demurrer.

The main point in the case is suggested by that portion of the complaint which is as follows:

"the defendant, through its duly constituted authorities, determined that said place of business of this plaintiff constituted a nuisance, and directed its summary abatement as such . . . and in the exercise of such power and authority as was vested in it by reason of the premises, the defendant, through a squad of its police officers, completely wrecked plaintiff's said place of business, etc."

This language is not clear as to what is meant by "its duly constituted authorities," nor by the word "determined." Much favor is extended to the allegations of a complaint tested by general demurrer. Obviously, however, the complaint must not be taken as alleging that any court of the city *determined* that the place was a nuisance, for it is not so stated as would be required by § 287 of Rem. Code. Nor can it be considered to have been *determined* by the city on account of any ordinance, because Rem. Code, § 291, provides for the pleading of an ordinance (by its title and date

of passage) to convey to the court knowledge of the existence of such ordinance, and the tenor and effect thereof.

The controlling question in the case is whether or not the officers charged with having destroyed the property acted as agents of the city with respect to its corporate duties and functions as contradistinguished from those relating to the general public. If the first, the rule of *respondeat superior* applies; if the latter, the city is not liable.

On calling attention to the statutory remedies against public nuisances, consisting of indictment or information, a civil action and abatement, counsel for appellant contend that the city having elected to pursue abatement, it should be held liable for its acts if it destroyed property which was not in fact a nuisance. Supporting such view, citation is given of a note on page 884, Cooley's Constitutional Limitations, 7th ed. (in that portion of his work discussing "The Police Power of the State"), as follows:

"If a municipal corporation proceeds to abate a nuisance, it possesses for that purpose only the rights of any private person, and if injury results to an individual, it must justify its action by showing that a nuisance existed in fact.".

Concerning the matter being immediately inquired into, viz.: governmental and corporate functions, one will not quite appreciate the note quoted without understanding the cases furnished in its support, only two of which need be noticed. First, the case of *Welch v. Stowell*, 2 Doug. (Mich.) 332. It is a case of demolishing a house occupied as a house of ill-fame, and the court held the *agents* and *officers* of the city liable for the destruction of the building, on the theory that only the manner of using the building and not the building itself was subject to abatement. But for the

purpose of showing the reason for holding the *officers* of the city liable for destroying the building, the opinion calls attention to an act of the legislature conferring on the city council:

"Full power and authority to make all such by laws and ordinances, as may by the said common council be deemed expedient for effectually preventing and suppressing all disorderly houses, and houses of ill-fame," pursuant to which grant of power the city council passed an ordinance entitled: "An ordinance to suppress disorderly houses and houses of ill-fame," the second section of which provides:

"When any such house or building, so occupied, shall be deemed by the common council to be a common nuisance, it shall be competent for said common council to abate such nuisance, by ordering such house or other building to be pulled down and removed, etc."

And further, that afterwards the council, by resolution, declared and adjudged the plaintiff's house to be a nuisance, and empowered and directed the city marshal to proceed and demolish it, which was done by the defendants, one of whom was the city marshal, the others assisting him. Thus there was liability here, not simply because section two of the ordinance reached too far in authorizing the destruction of the building, but also because, by the act of the legislature, the city ordinance and its resolution ordering the destruction of the building, the city had taken charge of the matter in its corporate capacity and was not acting in a governmental way for the general public. The defendants, as officers and agents of the city, acted pursuant to specific, formal corporate authority.

Secondly, and to the same effect, is the case of *Mayor etc. of Americus v. Mitchell*, 79 Ga. 807, 5 S. E. 201, where, upon the report and recommendation of the board of health, the mayor and *council* had declared and determined the thing in dispute (mill pond) to be a

nuisance and dangerous to health and ordered it abated. The owner sought to enjoin the city, alleging the pond was not a nuisance. The court held the determination by the health officers and the city council entitled the city to abate the nuisance, on the theory that delay might endanger the public health, but if the city did abate it it would be at its peril, and that if the owner, in a suit at law, could show the pond was not a nuisance, the city would be liable to damages. The city, in this case, it is to be noticed, was acting for itself under its own ordinance, and not for the public at large.

Counsel next call attention to that portion of the case of *Yates v. Milwaukee,* 10 Wall. (77 U. S.) 497, wherein the court uses this language:

"It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws either of the city or state, within which a structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business and all the property of the city, at the uncontrolled will of the temporary local authorities."

It was a case to enjoin the city from removing a wharf. Examination of it shows that the legislature of Wisconsin had enacted a law which authorized the common council of Milwaukee, *"by ordinance,* to establish dock and wharf lines upon the banks of the Milwaukee and Menomonee rivers, restrain and prevent encroachments upon said rivers and obstructions thereto."

The pleadings and proof in the case are silent as to whether the city council ever passed an ordinance to establish wharf and dock lines under the authority of the statute. But the city, by its common council, and

not by its executive or administrative officers or agents, by *ordinance,* declared and determined the particular wharf to be an obstruction to navigation and a nuisance, and ordered its abatement—thus exercising municipal or corporate functions. The case simply announces the rule that a person supposed to be aggrieved, or even a city, without some general law of the state or city by the terms of which a structure can be shown to be a nuisance, will not be allowed, by its mere declaration that the structure is a nuisance, to subject it to removal. It assumes that the city shall declare the thing to be a nuisance, and then assures us that such declaration will not of itself make the thing a nuisance or justify its removal. But the case at bar presents no such inquiry.

The sole question here is, does the complaint show on its face that the *City of Seattle* is liable, admitting that appellant's business and property did not constitute a nuisance and should not have been destroyed or damaged. There is, however, another portion of the opinion in the case just referred to worthy of notice, as to the matter of pleading, viz.: having in mind the fact that the legislature of Wisconsin had authorized the city of Milwaukee, "by ordinance, to establish dock and wharf lines, etc." the court said:

"It is true that it is said in argument that the city council has established a wharf and dock line under the authority of the statute we have cited and that Yates' dock projects beyond that line. No such defense is set up in the answer, and the existence of such a line, being a matter of which the court could not take judicial notice, it cannot be taken into account here."

So here, the complaint does not advise one if the city council of Seattle, by ordinance, has ever defined nuisances, a power conferred by statute, as we shall later

notice, or determined that appellant's place of business or property constituted a nuisance.

Attention is called to the case of *Sings v. Joliet*, 237 Ill. 300, 86 N. E. 663, 127 Am. St. 323, 22 L. R. A. (N. S.) 1128, spoken of by appellant as *a leading case.* Under a statute of Illinois providing the city council shall have power "to declare what shall be a nuisance and to abate the same," the city of Joliet, without any general ordinance on the subject, passed a special ordinance declaring the building in question to be a nuisance and ordered its abatement. Plaintiff sought to enjoin the enforcement of the order of abatement. The court disfavored injunctive relief out of respect to the judgment and discretion lodged in the municipal authorities in cases of emergency and necessitous circumstances, but held that, in such case, the city acted at its peril, so that if, in fact, the building was not a nuisance, and so proven in an action for damages, the city would be liable. This is the same doctrine as that announced in the case of *Mayor etc. of Americus v. Mitchell, supra.*

Subsequent to the argument in this court, counsel for appellant, still insisting, furnished additional authorities on the subject, "If a municipality destroys property, under its power to abate nuisances, which is not a nuisance, it is liable for the value of the property destroyed." We notice two of these cases.

First, is the case of *City of Orlando v. Pragg*, 31 Fla. 111, 12 South. 368, 34 Am. St. 17, 19 L. R. A. 196. Pragg sued the city of Orlando in trespass, alleging that, while

"he was engaged in the business of a dealer in natural curiosities, and had attached to his shop a museum for the exhibition of live and stuffed animals of various kinds for profit; . . . the said defendant by and through its mayor, *city council,* servants, agents

and employees, entered upon the premises of plaintiff
. . . and without just cause, removed and destroyed
property, etc.''

Upon issues by the city, the proof showed that the
city board of health had condemned the place and re-
ported the same to the city council, whereupon the city
council declared the place a nuisance and ordered it
abated. After notice and failure of the owner to re-
move, the city marshal removed the nuisance. The
court announced the rule of liability of the city in an
action at law if in fact there was no nuisance.

Secondly, the case of *Miller v. Horton,* 152 Mass. 540,
26 N. E. 100, 23 Am. St. 850, 10 L. R. A. 116. This is
a case of the killing of a horse claimed by the authori-
ties to have glanders. Plaintiff alleged, and the court
found, that the horse did not have glanders. Prior to
suit it was ordered that the horse be killed because of
an official report to, and by formal action of, a board
which, by an act of the legislature, was specifically em-
powered to pass upon such matters. The action was in
tort against the persons who killed the horse.

It would be unprofitable to review all or other of ap-
pellant's authorities in this opinion.

On the other hand, the city, in the case at bar, con-
tends that, in acting as it did through its officers, it was
performing governmental and not proprietary or cor-
porate functions, and hence is not liable.

In extending powers to cities of the first-class, such
as the city of Seattle, Rem. Code, § 7507, provides:

''Any such city shall have power . . . 31, to de-
clare what shall be a nuisance, and to abate the same,
and to impose fines upon parties who may create, con-
tinue, or suffer nuisances to exist.''

The large number of powers enumerated, including
this one, are granted not to the executive or to the min-
isterial officers of the city, but to the city, obviously for

the purpose of exercising corporate and municipal authority and control, and the city, when acting for itself in exercising these powers, does so through ordinance or formal declarations of its council. Again, by another law, § 7494, such city as Seattle may have a charter of its own, and accordingly Seattle has framed and adopted a charter. It provides, article 4, section 18, subd. 31, as follows:

"The city council shall have power by *ordinance and not otherwise* . . . thirty-first. Abatement and Punishment of Nuisances:—to declare what shall be a nuisance and to provide for the abatement of the same, and for the punishment of any person or party who may create, continue or suffer a nuisance to exist."

Of what benefit to the inhabitants of the city shall this safeguard in its charter be if its provisions may be ignored? For, as already pointed out, because of the silence on the subject of any city ordinance, the complaint must be considered as not alleging any act on the part of the city council, which is *the city,* if it is to be holden in this case in its corporate character.

In addition, the point in question, on principle, is not new in this state. It has been decided adversely to appellant's contention. In the case of *Howard v. Tacoma School District No. 10,* 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917D 792, Judge Ellis, writing the opinion, says that, in the face of rather strong argument, the court still adheres to its well established view that *a school district* is liable for negligence in the performance of governmental duties, while a *municipal corporation proper* is not liable in such case, but is only liable for negligence in the performance of proprietary or corporate duties. The opinion says:

"We have repeatedly held that an incorporated town or city is not liable where injury occurs through negligent performance or omission of performance

connected with its purely governmental functions, thus according to the municipality the sovereign immunity of the state. *Lawson v. Seattle,* 6 Wash. 184, 33 Pac. 347; *Russell v. Tacoma,* 8 Wash. 156, 35 Pac. 605, 40 Am. St. 895; *Lynch v. North Yakima,* 37 Wash. 657, 80 Pac. 79, 12 L. R. A. (N. S.) 261; *Cunningham v. Seattle,* 40 Wash. 59, 82 Pac. 143, 4 L. R. A. (N. S.) 629; *Cunningham v. Seattle* (rehearing), 42 Wash. 134, 84 Pac. 641, 4 L. R. A. (N. S.) 629."

Counsel for appellant, cognizant of this rule, seek to turn aside its application here because this is not a case of *negligence,* but one in which the city has taken or damaged and destroyed property. In the first place, such contention assumes and takes for granted the very thing in dispute, viz.: that the city as such, in its corporate and private capacity, did these things. We have already noticed there is no charge or allegation in the complaint that the city, by that plan which it must follow, ever declared a purpose to take or damage the property or directed its officer to do so. Again, for ascertaining the test as to whether the city is acting governmentally, and hence immune from liability, what difference in reason can there be whether the action be that of negligence or trespass?

In the case of *Simpson v. Whatcom,* 33 Wash. 392, 74 Pac. 577, 99 Am. St. 951, 63 L. R. A. 815, a plaintiff sued the city of Whatcom for damages for false imprisonment caused by his arrest under an ordinance declared void by the court on appeal from a conviction in the police court. This court, Judge Dunbar writing the opinion, says:

"The controlling question in all this character of cases is whether or not the officers, to whom are attributed the delinquencies which resulted in the damage alleged, are the agents of the city. If they are, then the doctrine of *respondeat superior* applies, and the city is liable; if not, otherwise."

Then, after referring to the perplexing distinction between corporate duties and public duties, the rule is announced as follows:

"We think, however, this general deduction may be made: that whenever the damaging action or the neglect of the officer arises in the execution of a duty which is for the exclusive benefit of the city, the city is liable; but if the duty, in whole or in part, is one imposed upon the city as a public instrumentality of the state, the city is not liable."

Thus it appears clear that the test of liability is, does the act arise in the execution of a duty which is for the exclusive benefit of the city, rather than whether it is an act of *negligence or trespass of the officer,* for the language is, "whenever the damaging action *or* the neglect of the officer arises, etc."

The trial court clearly observed and applied the proper rule in these cases.

The judgment in each case is affirmed.

MAIN, C. J., MOUNT, HOLCOMB, TOLMAN, and PARKER, JJ., concur.