[No. 19742.   Department One.   May 12, 1926.]

FRANK SHIMADA, *by his next friend S. Shimada,*
*Appellant,* v. DIKING DISTRICT No. 12 OF SKAGIT
COUNTY *et al., Respondents.*[1]

[1] DRAINS (13-1)—NEGLIGENCE—LIABILITY OF OFFICERS FOR DAMAGES.
Commissioners of a diking district are not liable for the torts
of the district where they did not personally direct or participate
therein.

[2] SAME (13-1)—LIABILITY OF DISTRICT—NEGLIGENCE OF AGENTS. A
diking district is a municipal corporation and is not liable for
the torts of its officers, agents, or servants, in the absence of any
statute expressly declaring the liability.

[3] SAME·(13-1)—DIKING DISTRICTS—STATUTORY LIABILITY FOR TORTS
OF AGENTS. Rem. Comp. Stat. §§ 950, 951, authorizing actions
by or against any county, incorporated town, school district "or
other public corporation of like character" does not include dik-
ing districts, which, although public corporations, are not of like
character.

Appeal from a judgment of the superior court for
Skagit county, Joiner, J., entered October 30, 1925,
upon sustaining a demurrer to a complaint, in an
action for personal injuries.   Affirmed.

*H. C. Thompson* and *Wilbra Coleman,* for appellant.

*R. V. Welts, Thomas Smith,* and *J. G. Smith,* for
respondents.

FULLERTON, J.—The appellant, Frank Shimada, is
a minor, nine years of age, and sues herein by his
guardian.   The respondent, Diking District No. 12, of
the county of Skagit of the state of Washington, is a
diking district organized under the act of the legisla-
ture of March 20, 1895 (Laws of 1895, p. 304).   The
respondents, W. E. Jennings, P. Samuelson and Ben
Otterstedt, are the duly elected and acting commis-

[1]Reported in 245 Pac. 916.

sioners of the diking district named. The defendant, Lewis Ekman, is the general superintendent and foreman of the diking district, and has charge of all work performed on behalf of the district in the construction and repair of its dikes, ditches and other structures. The defendant, ———— Ekman, is the wife of Lewis Ekman.

On September 28, 1924, the diking district was engaged in the repair of one of its dikes, on the top of which dike a wagon road extended. The work required blasting, and a box containing dynamite and dynamite caps was brought to the place of work for that purpose. During a temporary absence of the workmen engaged in the work, the box and its contents were left in a conspicuous and exposed position near the place of work. The minor appellant, while passing over the road mentioned, espied the box, and, going to it, took therefrom and carried away certain of the dynamite caps. Some two days later, while he was playing with the caps, one of them exploded, blinding and otherwise permanently injuring him. The work in which the district was engaged was being performed under the direct and immediate supervision of the defendant, Lewis Ekman.

In this action, the minor appellant sought to recover for the injuries suffered. To his complaint, which embodied the facts above outlined, the respondents and the defendants interposed a general demurrer. The trial court sustained the demurrer as to the respondents, and overruled it as to the defendants. The appellant elected to stand on his complaint, whereupon the court entered a judgment of dismissal with prejudice as to the respondents. The appeal is from the judgment so entered.

[1] As to the commissioners of the district, there would seem to be. but little question that the demurrer

was rightly sustained, in so far as the action is against them personally. The district is a corporation, and these persons but compose the body whom the statute empowers to direct and carry out its corporate functions. Their authority is to "manage and conduct the business affairs of the district," and their acts in that behalf, when within the scope of their authority, are the acts of the corporation, not their individual acts, and they are not bound to answer personally, merely because of their official relation to the corporation, either for its contracts or for torts committed by its subordinate agents or employees. If the rule were otherwise, the corporation could hardly function. No person of character or responsibility could afford to accept such a position, if he is to be held personally liable for the contracts he incurs on behalf of the corporation, or personally liable for torts committed by the persons he employs on its behalf. This is not to say that he can in no case be so personally liable. In the case of a contract he is liable, if he binds himself upon it, and in the case of a tort he is liable, if he personally directs its commission, or participates therein, or remains inactive when he knows, or should know in the exercise of reasonable care, that it is about to be committed and takes no steps to prevent it. But he is liable in these instances because of his personal action or inaction, not merely because of his official position. In this instance, there is no charge that the commissioners participated in the wrong giving rise to the appellant's injury. There is no charge, even, that they were guilty of employing an incompetent servant. They can be held therefor, if held at all, only under the doctrine of *respondeat superior*. But this doctrine is applicable only in instances where the subordinate is the servant or agent of the superior,

and here the diking district is the superior, not the commissioners who are merely its directing head.

[2] The question whether the district is liable involves different principles and is of more difficulty. The first question in dispute between the parties is whether a diking district organized under the statute cited partakes of the nature of a public or of a private corporation. It is our opinion that it partakes of the nature of the former. Indeed, it would seem that the statute itself permits of no other interpretation. The organization of such a district is initiated by petition. The petition must set forth the boundaries of the proposed district, the nature of the proposed system of diking it is contemplated to construct, must contain the averment that the proposed system "will be conducive to the public health, convenience and welfare, and increase the public revenue, and that the establishment of said district and system of diking will be of special benefit to the property included therein," and the board empowered to hear and determine the truth of the allegations of the petition must find as fact, before the final steps necessary to complete the organization are taken, that the quoted averments of the petition are true.

Again, the proceedings had for the organization of the district are not wholly voluntary. The initial petition needs be signed only by such number of persons as own a majority of the acreage within the boundaries of the proposed district, and, in the final vote necessary to complete the organization, a majority vote of the legally qualified electors within the district alone is required. True, anyone affected by the organization of the district is given an opportunity to make objections against the establishment of the district, but he must show some reason in law or some reason in fact, fatal to the establishment, before his

objections will avail him anything. His mere disagreement with the policy or objects of the majority is of no concern. However much he may be unwilling to have his land subjected to the burden imposed upon it by the establishment of the district, he must submit, if the majority rule otherwise. It may be that the organization is voluntary in so far as the persons holding a majority in acreage of the land within the district are concerned, but, manifestly, it is involuntary as to the holders of the minority acreage, however large that minority may be. Again, the district, when organized, has the power of eminent domain—a power not an attribute of a corporation purely private, but of one affected by a public interest and subject to regulation by the state. And, again, the district has perpetual succession. Its duration is neither limited by the fundamental law nor by statute. As long as organized government exists, the lands of the unwilling land owner may be taxed annually to maintain the ditches, drains and dikes the district is organized to construct and maintain. The foregoing are not attributes of a private corporation. They belong and can legally belong to those only that are in their essential elements public.

Our cases are to the effect that such districts are public rather than private corporations. *Brown Brothers v. Columbia Irr. Dist.,* 82 Wash. 274, 144 Pac. 74; *Peters v. Union Gap Irr. District,* 98 Wash. 412, 167 Pac. 1085; *Whitten v. Silverman,* 105 Wash. 238, 177 Pac. 737; *Columbia River T. & L. Co. v. Comm'rs of Diking Dist. No. 2,* 108 Wash. 148, 183 Pac. 134.

In the latter of these cases, after quoting from the statutes providing for the formation of diking districts, it was said:

"These provisions of the statute render it plain that a diking district, when lawfully created, becomes

a legal entity as a public corporation, and that its board of commissioners possess the usual discretionary powers of managing boards of public corporations, in so far as the powers and duties enumerated in the above quoted sections of the statute are concerned."

The case of *Whitten v., Silverman* is also instructive. In that case it appeared that an election had been held in a diking district for the offices of commissioners, in which three certain persons had been returned as elected by the canvassing board appointed by law to canvass the returns of such an election. Three other persons, claiming that they, instead of the three returned, had been legally elected, instituted a contest proceeding in the superior court. The jurisdiction of the superior court to try the issue was challenged, and, while the trial court overruled the challenge, this court sustained it, holding that the district was a municipal corporation, and that the courts were without jurisdiction to entertain a contest proceeding of an election held therein, in the absence of express statutory authority permitting a contest in the courts, and that there was no such statutory authority. The decision placed diking districts in this respect on a plane with the more common municipal corporations, such as counties, cities, towns, and school districts.

It is a general rule, although perhaps not of uniform acceptance, that a municipal corporation is not liable to answer for the personal torts of its officers, agents or employees in the absence of a statute expressly declaring them so liable. Such is the rule in this state. *Clark v. Lincoln County*, 1 Wash. 518, 20 Pac. 576; *Kirtley v. Spokane County*, 20 Wash. 111, 54 Pac. 936; *Redfield v. School District No. 3*, 48 Wash. 85, 92 Pac. 770; *Howard v. Tacoma School Dist. No. 10*, 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917D 792; *Orrock v. South Moran Township*, 97 Wash. 144, 165 Pac. 1096;

*Kelley v. School District No. 71,* 102 Wash. 343, 173 Pac. 333; *State ex rel. King County v. Superior Court,* 104 Wash. 268, 176 Pac. 352; *Swanson v. School Dist. No. 15,* 109 Wash. 652, 187 Pac. 386.

[3] The further question is whether there is a statute making diking districts liable for the torts of their agents or employees. That there is no direct statute so doing is conceded, but it is thought such statutory authority is found in §§ 950 and 951 of the code (Rem. Comp. Stat.) [P. C. §§ 8393, 8394]. These sections read as follows:

"§ 950. An action at law may be maintained by any county, incorporated town, school district, or other public corporation of like character in this state, in its corporate name, and upon a cause of action accruing to it, in its corporate character, and not otherwise, in either of the following cases:—

"1. Upon a contract made with such public corporation;

"2. Upon a liability prescribed by law in favor of such public corporation;

"3. To recover a penalty or forfeiture given to such public corporation;

"4. To recover damages for an injury to the corporate rights or property of such public corporation."

"§ 951. An action may be maintained against a county, or other of the public corporations mentioned or described in the preceding section, either upon a contract made by such county or other public corporation in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation."

The quoted sections were enacted in territorial days, and are a part of the state law in virtue of § 2, Art. 27, of the state constitution. At the time of their enactment, and at the time of the adoption of the constitution, diking districts were unknown to the law,

and if they are included within the provisions of the statute it is only by inference, and "this occurs," to use the words of Mr. Endlich, "when the act deals with a genus, and the thing which afterwards comes into existence is a species of it." (Endlich on Interpretation of Statutes, § 112.) But it is not our opinion that diking districts are a species of the genus corporations enumerated in the statute. The many distinctions between such corporations and the enumerated corporations need not be pointed out. The principal and controlling one is that diking districts have not the general power of taxation that is possessed by the enumerated corporations. They may levy taxes only for district purposes—the purposes of maintenance and repair of their diking works—and these they are permitted to impose only on the ratio of benefits. No judgment entered in the present action could be recovered without further legislative action, and in our opinion this fact alone forbids the holding that they are a species of such genus. It would seem to be conclusive also of the fact that the legislature did not intend that they should be liable for torts of this sort; for, manifestly, had it so intended, it would have made provision for the payment of judgments recovered in such actions.

The cases cited from other jurisdictions holding contrary to the general rules announced by our cases, we shall not review. It is sufficient to say that we find in them no compelling reason requiring a departure from our holdings.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, MITCHELL, and MAIN, JJ., concur.