[No. 25404.    Department Two.    March 19, 1935.]

RUTH MOLA, *as Administratrix, Appellant,* v. METRO-POLITAN PARK DISTRICT OF THE CITY OF TACOMA, *Respondent.*[1]

 *Albert C. Bise, Wright & Wright,* and *Felix Rea,* for appellant.

*John M. Coffee, Leo Teats,* and *Ralph Teats,* for respondent.

HOLCOMB, J.—This action was instituted by appellant as administratrix against respondent, a municipal corporation, for damages for the death of appellant's decedent, her husband.

[1]Reported in 42 P. (2d) 435.

There is little dispute in the facts in the case. At the conclusion of the testimony offered on behalf of appellant, the lower court granted the motion of respondent for a nonsuit, and judgment was entered thereon, from which this appeal results.

Respondent is an organized metropolitan park district, established and created by virtue of Rem. Rev. Stat., §§ 6720 to 6741 [P. C. §§ 1150 to 1171], inclusive.

Under the statutes authorizing its creation and existence, property, both inside and outside a city of the first class, may be acquired and operated in connection with its park system. Respondent operates and maintains what is known as "Titlow Beach Park and Playground," and as a part thereof, among other things, maintains a bathing beach, or bathing lagoon, sometimes known as "Titlow Beach Lagoon." This recreation place is not within the municipal limits of Tacoma, but adjoins the city.

The lagoon is approximately 480 feet wide by 720 feet long. It is close to the waters of Puget Sound, being separated from it only by a high railroad grade, wide enough for a right of way to accommodate double tracks. A portion of the beach property is low land, which, when the tides are high, forms a lagoon. At ebb tide the lagoon is practically free from all water, which is drained, when desired, by opening gates and allowing the water to run out. The water is let in to the lagoon at high tide by two pipes about four feet in diameter, and the gates are then opened. At the entrance to the pipes into the lagoon is a concrete bulkhead or pier, which pier is placed there to hold the pipes in position and support the gates. Inside the lagoon, about one hundred feet from the dam, or railroad grade, and the head gate, is a diving tower. The drain pipes, about ninety feet long, run under

the grade on the ground or bottom of the lagoon, with the upper surface well below the surface of the waters of the lagoon and the lower end being toward or in Puget Sound. The depth of the water in the lagoon between the diving tower and bulkhead is over the head of an ordinary person.

No guards, netting, or any other thing, is maintained to prevent people from being sucked into the pipes when the gates are opened, nor was there any there at the time of the death of decedent. The gates to the pipes are opened by means of a screw, which passes through the hub of an eighteen inch hand-wheel, which raises and lowers the cap or gates to the pipes. When the gates are opened, the water starts through the pipes with something of a whirlpool effect. This is not observable by one on a level with the water or by one in the lagoon, but can only be seen by one standing above the surface of the water. When the pipes are open, the water goes through with such force that, as one witness said, ''no human could hold himself there.''

At the time of the death of decedent, the life guards, or pool attendants, had opened the gates to the pipes, but gave no warning to anyone of what they were doing, and maintained no lookout. They had no life saving apparatus about the premises and no ropes. For the purpose of showing that respondent was aware of that condition, testimony was given to the effect that, immediately after the drowning of decedent, one of the guards spoke to one of the witnesses, and said that he had been trying to get Kennedy, the local park manager, to put a fence or netting out there to protect people from getting too close to the holes.

The gates were opened about 8:15 p. m., at which time decedent was swimming in the pool, and no warning being given, swam too close to the opening of the

pipes and was drawn in, which caused his drowning and death.

There is no testimony in the record to the effect that these gates were ever opened prior to this one occasion without a warning or driving swimmers away from the vicinity of the outlet pipes.

It is doubtful whether appellant has the legal right to bring an action for such damages, whether considered as negligence or the maintenance of a nuisance, under our statutes for the creation of such a public corporation as that here involved, but we disregard that question as unnecessary to decide in this case, because of our decision on the merits. (See *Shimada v. Diking District No. 12,* 139 Wash. 168, 245 Pac. 916.)

■■ The principal argument advanced by appellant to reverse the judgment of the trial court is that the park district maintained a nuisance, and that, by reason thereof, the action would not fall within the decisions of this court, which announced the rule that a park district is not liable for damages caused by the negligence of its employees, because the operation of a park by a municipality is a governmental function. Appellant cites many texts and cases from other jurisdictions to the effect that a municipality exercising governmental functions is liable for injuries if those injuries were caused through the maintenance of a nuisance by such municipality. Appellant admits, however, that the pool would be safe for the purposes for which it was built when the gates were closed.

It cannot be questioned that respondent is a municipal corporation, and has a distinct corporate identity as such. (*State v. Metropolitan Park District,* 100 Wash. 449, 171 Pac. 254.) Nor can it be questioned that, if it maintained a bathing beach or lagoon in its governmental capacity, not for profit, it cannot be held liable for mere negligence on the part of its officers,

agents or employees in the absence of a statute expressly declaring it so liable. *Clark v. Seattle,* 102 Wash. 228; 172 Pac. 1155; *Nelson v. Spokane,* 104 Wash. 219, 176 Pac. 149, in which last case we said:

"We are committed by the decisions of this court to the doctrine that the operation or improvement of a park not for profit is the exercise of a governmental function." (Citing cases.)

In the *Clark* case, *supra,* it was held that, where a wading pool in city playgrounds was cleaned and drained each Friday, the fact that a broken bottle was found therein on Sunday was not sufficient to charge the city with maintaining a nuisance, or render it liable for injuries sustained by a child cut by the broken glass, there being no evidence of notice of the glass, either actual or constructive. The above statement is somewhat applicable to the facts in this case.

Rem. Rev. Stat., § 9916 [P. C. § 9131-71], prescribes that "nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

This swimming pool at Titlow Beach is maintained under the specific statute authorizing such park districts to maintain bathing pools.

It was not only authorized, but was required, to be maintained. It is therefore a mandatory duty of the board of park commissioners to maintain it. That being true, it could not be said to constitute a nuisance in a legal sense. *Jacobs v. Seattle,* 93 Wash. 171, 160 Pac. 299, L. R. A. 1917B, 329; *Hughes v. McVay,* 113 Wash. 333, 194 Pac. 565, 14 A. L. R. 681; *Stuver v. Auburn,* 171 Wash. 76, 17 P. (2d) 614.

It could only become a nuisance by the maintenance of something in connection therewith which would be inherently dangerous. The act of the guard in open-

ing the gates and emptying the lagoon without warning was an act of negligence on the part of the guard, but did not create a nuisance, such as was the case where the port warden of Seattle allowed a large quantity of very high explosives to be brought in, deposited and retained in the harbor of Seattle, as was done in the case of *Seattle v. Lloyds' Plate Glass Insurance Co.*, 253 Fed. 321.

It would be useless to attempt to discuss the texts and cases cited and quoted in the briefs of appellant. Under our statutes and cases, there can be no recovery for the performance of governmental duties by respondent for mere negligence on the part of its employees or officers; and there was no showing that a nuisance was created and existed which would, in effect, give rise to a liability.

Judgment affirmed.

MILLARD, C. J., STEINERT, BLAKE, and MAIN, JJ., concur.