[No. 32043. *En Banc.* October 1, 1953.]

CLAYTON J. KILBOURN, *Individually and as Guardian, Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

[1] Reported in 261 P. (2d) 407.

*C. M. McCune* and *John A. Godfrey,* for appellant.

*A. C. Van Soelen* and *Arthur Schramm,* for respondent.

HILL, J.—The principal question presented is the liability of a city for an injury sustained in one of its parks when a

dead limb projecting over a cinder path fell and injured a person on the path.

The injured person, a child then less than two years of age, was in Seward park in the city of Seattle for a family picnic and, while playing on a cinder walkway, was struck by a dead limb which fell from a madrona tree. There was no wind; the limb had been dead for four or five years, and a portion of it was almost completely disintegrated by the impact when it hit the child and the ground. Estimates of its size vary from six inches to two and one-half feet in diameter and from eighteen inches to six or seven feet in length. Testimony disclosed that the area was inspected daily and that it was normal practice to remove dead limbs.

This action was brought by the father of the child, individually and as guardian, for damages incurred as a result of her injuries. The jury brought in a verdict for the child in the amount of $4,500, and for the father in the amount of $627.42, covering hospital bills and medical expenses. The trial court granted judgment for the city notwithstanding the verdict. The father appeals, individually and as guardian.

The city urges that the operation of the park is a governmental function and that, therefore, even if negligent, it is immune from liability.

It is an established rule in this state that the operation of a public park by a city (not for profit) is the exercise of a governmental function. *Russell v. Tacoma*, 8 Wash. 156, 35 Pac. 605, 40 Am. St. 895 (1894); *Nelson v. Spokane*, 104 Wash. 219, 176 Pac. 149 (1918); *Stuver v. Auburn*, 171 Wash. 76, 17 P. (2d) 614 (1932); *Mola v. Metropolitan Park Dist.*, 181 Wash. 177, 42 P. (2d) 435 (1935).

Appellant strenuously urges that the rule of immunity from liability for negligence by a municipal corporation while engaged in the exercise of a governmental function should be changed, and cites numerous authorities.

This argument has been considered by this court and rejected. In *Hagerman v. Seattle*, 189 Wash. 694, 66 P. (2d) 1152, 110 A. L. R. 1110 (1937), we recognized that all of the

reasons for such immunity had been subjected to vigorous attack, but said that

"... the doctrine has become fixed as a matter of public policy, regardless of the reason upon which the rule is made to rest, and ... any change therein must be sought from the legislature."

That opinion was written almost sixteen years ago. A review of cases and legal literature dealing with the governmental immunity defense in the intervening years offers convincing evidence of a growing demand for *legislation* that would require municipal corporations, if not the state itself, to bear the same responsibility for their negligence as do private corporations; but it is generally recognized, as we indicated in the *Hagerman* case, *supra,* that the rule of governmental immunity has become so firmly fixed as a part of the law of municipal corporations that it is not to be disregarded by the courts until the legislature announces a change in public policy.

Appellant urges that we have such legislation in Rem. Rev. Stat., § 951 [*cf.* RCW 4.08.120], which reads:

"An action may be maintained against a county, or other of the public corporations mentioned or described in the preceding section [*i.e.,* incorporated town, school district, or other public corporation of like character in this state], either upon a contract made by such county or other public corporation in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation."

The statute in question dates back to 1869, and is found, also, in practically the same words, in the code of 1881. It became the law of the state of Washington by virtue of our state constitution, Art. XXVII, § 2.

That this statute applies to incorporated towns as distinctly and specifically as it does to counties and school districts is apparent. We recognized that such was the case in our opinion in *Howard v. Tacoma School Dist. No. 10,* 88 Wash. 167, 152 Pac. 1004 (1915), wherein we pointed out that two lines of decisions had been developed, in one

of which, dealing with counties and school districts, it had been held that the statute abrogated the common-law rule of immunity from liability for injuries occurring through negligent performance or omissions to perform governmental duties, and in the other, dealing with incorporated towns and cities, the statute had been ignored and it had been held that incorporated towns and cities were entitled to immunity from liability under such circumstances. We at that time refused to overrule this latter line of cases because to do so

". . . would be to unsettle the law of damages as it has been applied to corporations purely municipal almost from the beginning of statehood";

and we decided that the only practicable course was

". . . to uphold both lines of precedent as applied respectively to the two classes of corporations in the adjudicated cases."

We have continued both lines of precedent to the present time, with only isolated recognition of the fact that the statute applies to incorporated towns as well as to counties and school districts. In 1917, without discussing the division in our cases, we construed Rem. Rev. Stat., § 951 (then Rem. Code), as being applicable to townships, and thus placed them in the county and school district category. *Orrock v. South Moran Township,* 97 Wash. 144, 165 Pac. 1096. In 1918, in *Hotel Cecil Co. v. Seattle,* 104 Wash. 460, 177 Pac. 347, without reference to the statute, we indicated the existence of the two lines of authority, saying:

"In the case of *Howard v. Tacoma School District No. 10,* 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917D 792, Judge Ellis, writing the opinion, says that, in the face of rather strong argument, the court still adheres to its well established view that *a school district* is liable for negligence in the performance of governmental duties, while a *municipal corporation proper* is not liable in such case, but is only liable for negligence in the performance of proprietary or corporate duties."

Again, in 1921 we were confronted with the argument that there is no ground upon which to base the distinction we

have drawn between cities and counties, and again we adhered to the determination reached in *Howard v. Tacoma School Dist. No. 10, supra,* saying that we had in that case "reviewed in detail all of our decisions on this question and approved them," and stating:

"It is now the settled and fixed law in this state that a county may become, and a city is not, liable for damages done while engaged in the performance of a strictly governmental function." *Whiteside v. Benton County,* 114 Wash. 463, 195 Pac. 519.

We find no opinion since 1926 in which Rem. Rev. Stat., § 951, has been urged as the basis for abrogating the immunity of any municipal corporation (other than counties and school districts) from liability for the torts of their agents, officers, or employees. In that year, a diking district was held to be immune from such tort liability because such districts were not "public corporations" within the purview of that section. *Shimada v. Diking Dist. No. 12,* 139 Wash. 168, 245 Pac. 916 (1926).

There is some suggestion in *Berglund v. Spokane County,* 4 Wn. (2d) 309, 103 P. (2d) 355 (1940), that Rem. Rev. Stat., § 951, applies only to "counties and other quasi-municipal corporations" as distinguished from a "conventional municipal corporation." We there said:

"By Rem. Rev. Stat., § 951 [P.C. § 8394], counties and other similar public corporations are made liable 'for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation.'

"The effect of these statutes [Rem. Rev. Stat., Vol. 7A, § 6450-1 *et seq.,* and Rem. Rev. Stat., § 951] when considered together, is to subject counties and other quasi-municipal corporations to the same liability for negligence in the maintenance of its public ways, including bridges, as would, in a similar case, be imposed upon a conventional municipal corporation."

The only legislative reaction to our decisions has not been an effort to deprive cities of the immunity which has been accorded them, but, instead, a restoration to school districts and counties of some measure of the immunity of which we had held they were deprived by Rem. Rev. Stat., § 951.

Immunity from tort liability was restored to school districts for

" . . . non-contractual acts or omission . . . relating to any park, playground, or field house, athletic apparatus or appliance, or manual training equipment. . . . " Laws of 1917, chapter 92, p. 332; Rem. Rev. Stat., § 4706 [cf. RCW 28.58.030].

See *Snowden v. Kittitas County School Dist. No. 401*, 38 Wn. (2d) 691, 231 P. (2d) 621 (1951).

Immunity from tort liability was restored to counties for

" . . . noncontractual acts or omissions . . . relating to the improvement, protection, regulation and control for flood prevention and navigation purposes of any river or its tributaries and the beds, banks and waters thereof. . . . " Laws of 1921, chapter 185, p. 747; Rem. Rev. Stat., § 9663 [cf. RCW 86.12.180].

■ The reason that impelled us, in 1915, to refuse to overrule our cases upholding governmental immunity of cities and towns, *i.e.,* because to do so

" . . . would be to unsettle the law of damages as it has been applied to corporations purely municipal almost from the beginning of statehood" (*Howard v. Tacoma School Dist. No. 10, supra*),

has been strengthened by literally scores of cases which have been decided on the basis of the existence of such governmental immunity. It is the "settled and fixed law of this state," and any change therein must come from the legislature.

A bill providing for a waiver of the defense of governmental immunity by the state and its political subdivisions was introduced in the 1953 legislature, but no action was taken on it. However, the legislature did take affirmative action which further strengthens our belief that it approves the construction which we have heretofore placed on the language of Rem. Rev. Stat., § 951. In the preparation of the Revised Code of Washington, the revisers had changed Rem. Rev. Stat., § 951, to read as follows:

"An action may be maintained against a county, *city, town, school district,* or other public corporation, either upon

a contract made in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such public corporation." RCW 4.08.120. (Italics ours, indicating additions by the revisers; other changes, not material here, are not indicated.)

The 1953 legislature amended RCW 4.08.120 by returning to the wording of Rem. Rev. Stat., § 951, thus specifically rejecting the changes made by the revisers. Laws of 1953, chapter 118, § 2, p. 232. (The present proceeding was initiated and tried prior to the 1953 amendment.)

■ Appellant next urges that, since the city permits a refreshment stand in the park, for the privilege of operating which the concessionaire pays a percentage of his gross revenues to the city, the operation of the park has become a proprietary function.

While there are a few cases supporting this view, in the majority of jurisdictions the courts, adhering to the rule that the operation of a park is a governmental function, have held that, when the revenue received by the city is but incidental to the primary purpose for which the park is maintained, its operation remains a governmental function. *Cornelisen v. Atlanta,* 146 Ga. 416, 91 S. E. 415 (1917); *Kellar v. Los Angeles,* 179 Cal. 605, 178 Pac. 505 (1919); *Baltimore v. State, use of Blueford,* 173 Md. 267, 195 Atl. 571 (1937). The evidence here shows that the annual cost of maintaining parks in Seattle is $1,400,000 and the revenue from the concessions is $40,000.

Appellant's main contention is that the tree with the rotted limb constituted a nuisance and that, consequently, an exception to the rule of governmental immunity is applicable.

We have never had occasion to pass directly upon the existence of such an exception where the nuisance was attributable to the negligence of the city, although in *Hagerman v. Seattle, supra,* we said:

"In passing, it may be noted that in at least the following instances, the doctrine of immunity does not apply: (1) Where the injury complained of is the taking or damaging

of private property for public use, without compensation; (2) where damage or injury has been occasioned through the establishment, maintenance, or permission of a nuisance; and (3) where the right of action is based on the failure of the municipal corporation to use ordinary care in maintaining its streets, sidewalks, and public ways in a reasonably safe condition for travel in the usual modes."

And in *Mola v. Metropolitan Park Dist., supra,* we said:

"There can be no recovery for the performance of governmental duties by respondent for mere negligence on the part of its employees or officers; and there was no showing that a nuisance was created and existed which would, in effect, give rise to a liability."

And in *Stuver v. Auburn, supra,* we said:

"For the purposes of this case only, we assume, as argued by appellant, that the doctrine of municipal immunity for negligence in the performance of acts embraced within governmental functions does not apply to the case of a nuisance created and maintained by a municipality."

In recent years, there has been a great increase in the number of personal injury actions brought against municipalities on the theory that the city had created, maintained, or permitted a nuisance. It was said in an article entitled "Recent Substantive Developments Affecting Municipal Tort Liability," 21 Cincinnati L. Rev. 31, 48 (1952), that:

"Where negligence is present, but the defense of governmental functions subsists, a wise advocate may seek to present his case upon the theory of public nuisance."

We have, in the preparation of this opinion, reviewed and analyzed many cases involving the claimed application of the nuisance exception to the governmental immunity rule; and we are impressed by the aptness of a statement found in *Ramirez v. Cheyenne,* 34 Wyo. 67, 79, 241 Pac. 710, 42 A. L. R. 245 (1925), that " 'nuisance' is a good word to beg a question with." "Nuisance" has also been not inaptly described as a "catchall of ill-defined rights." *Laspino v. New Haven,* 135 Conn. 603, 67 A. (2d) 557 (1949).

In most cases involving injuries sustained in city parks, the nuisance relied upon originated in negligence,

and the "nuisance" label was used for the obvious purpose of circumventing the defense of governmental immunity. Some courts have taken the label at its face value without regard to the origin of the nuisance, but others have been at some pains to make clear that a nuisance is a condition and not an act or failure to act of a person responsible for the condition, and to point out the distinction between a violation of an absolute duty to protect the public from dangers inherent in a condition itself and a violation of a relative duty to use the degree of care required in the particular circumstances, which violation may also result in a dangerous condition. As the New York court of appeals pointed out in *McFarlane v. City of Niagara Falls*, 247 N. Y. 340, 160 N. E. 391, 57 A. L. R. 1 (1928):

"Nuisance as a concept of the law has more meanings than one. The primary meaning does not involve the element of negligence as one of its essential factors."

It is, of course, possible for the same act to (1) constitute negligence and (2) give rise to a nuisance. *Pearson v. Kansas City*, 331 Mo. 885, 55 S. W. (2d) 485 (1932).

█ A city can act only through its officers and employees. It has been held in what seem to us the better reasoned opinions in cases involving personal injuries sustained in consequence of negligence by such officers and employees in the performance of governmental functions that, if their negligence was a proximate cause of the injury, the fact that the negligence also gave rise to a nuisance does not necessarily render the defense of governmental immunity unavailable to the city.

It was pointed out by the supreme court of Michigan in *Royston v. City of Charlotte*, 278 Mich. 255, 270 N. W. 288 (1936)—which was similar in many respects to the present case—that a determination that a city is liable if the negligence of its officers and employees creates a nuisance, results in immunizing the negligence but not the result thereof. In that case, a boy had been killed while using one of the swings in a park when a timber post set in concrete broke off and an iron crossbar supported by the post fell and frac-

tured his skull. The cause of the broken post was deterioration of its footing in the concrete, which a proper inspection might have disclosed. The trial court held that the maintenance of the park was a governmental function, and that the city was not liable for injuries received as the result of the negligence of its employees or agents in the maintenance thereof. This holding the supreme court approved.

However, the trial court had permitted the case to go to the jury on the theory that the faulty and dangerous condition of the swing constituted a public nuisance, and that the city was liable even though performing a governmental function. The supreme court held that it was error to permit the nuisance theory to go to the jury, and said:

"If a municipality performed a governmental function in erecting the swing and 'is not liable for injuries received by negligence of its employees and agents in the maintenance thereof,' it is inconsistent to hold that recovery may be had on the ground that such negligence of the employees or agents of the municipality in the maintenance of the swing constituted the swing a public nuisance. A city can act only through its officers or employees and if there was negligence in making inspection of the condition of the swing and not discovering the defective condition then there was but negligence in the maintenance and no liability.

"Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded. Want of care in maintenance, however, presents the question of negligence only, and not that of a public nuisance, which must rest on inherent danger even under the best of care."

In *McFarlane v. City of Niagara Falls, supra,* Justice Cardozo, then chief justice of the New York court of appeals, commented that:

"Statements appropriate enough in their application to nuisances of one class have been thoughtlessly transferred to nuisances of another."

In that case, it was held that whenever a nuisance has its origin in negligence, the defense of contributory negligence cannot be cut off "by affixing to the negligence

of the wrongdoer the label of a nuisance." No more, it seems to us, should the defense of governmental immunity in such a case be cut off "by affixing to the negligence of the wrong-doer the label of a nuisance."

In the instant case, the plaintiff (appellant here) made a double-barreled attack on the city; one cause of action was predicated on negligence, the other on nuisance. The trial court properly refused to submit the case to the jury on the negligence theory, but did permit it to go to the jury on the nuisance theory.

■ Despite some language in *Seattle ex rel. Dunbar v. Dutton,* 147 Wash. 224, 265 Pac. 729 (1928), from which an inference to the contrary might be drawn, a dead limb on a tree in a public park does not constitute a public nuisance *per se,* and there is no absolute duty on the city in the operation of its parks to remove all such limbs. The following statement from an Ohio case is interesting and applicable.

"The public park system of the city of Cleveland is very extensive and comprises probably hundreds of acres. These parks contain many pools and wooded hills with precipitous banks and bisected here and there with running streams. Throughout these parks may be found numerous dangerous hazards to the unwary. If it were the duty of the city to maintain these natural parks in a state of safety in the same sense and to the same degree that it is required to use ordinary care in the exercise of its proprietary function, then a destruction of much of the natural beauty of the parks would be required. To retain and maintain this park system as nearly in its natural state as possible has been the constant and consistent objective. To remove all the many hazards created by nature on the hills and slopes and from the water holes and running streams would destroy the beauties and eliminate its attractions. A member of the public assumes the risks when roaming over a park in its near original or natural state." *City of Cleveland v. Walker,* 52 Ohio App. 477, 482, 3 N. E. (2d) 990 (1936).

Appellant concedes that the location of the particular tree is an element in the determination of whether or not there was a nuisance.

■ Where a city creates or permits a situation to exist which the court can say as a matter of law constitutes a

nuisance *per se*, and an injury occurs in consequence thereof, the city is liable and it is then immaterial whether the city was or was not negligent and the defense of governmental immunity should not be available. Where, as here, the existence of a nuisance is itself a question for the jury, and the nuisance, if any, existed as a consequence of the negligence of the city's officers, agents, or employees, which negligence the jury could find was the proximate cause of the injury for which the action is brought, the defense of governmental immunity should be available to the city.

The hardships and injustices arising from the defense of governmental immunity—of which this case is typical—are unquestionably the reason some courts have from time to time permitted the transmutation of what are clearly negligence cases into nuisance cases, and it may well be that legislation should be enacted to make municipal corporations liable for their negligence on the same basis as are private corporations, but the change in long established public policy should be by legislative enactment and not by the expedient of placing a "nuisance" label on what are clearly negligence actions.

The city's defense of governmental immunity was properly interposed here, and the trial court did not err in granting the city's motion for judgment notwithstanding the verdict and in dismissing the action. The judgment is affirmed.

MALLERY, HAMLEY, DONWORTH, WEAVER, and OLSON, JJ., concur.

FINLEY, J., concurs in the result.

SCHWELLENBACH, J. (concurring in the result)—I agree that, in the instant case, the dead limb did not constitute a nuisance; that the minds of reasonable men could not differ thereon; and the nuisance question should not have been submitted to the jury. I agree with the majority that the courts, in order to avoid governmental immunity, have called almost everything a nuisance. But I do not agree

with the majority that the defense of governmental immunity should be available where the nuisance exists as a consequence of the negligence of the city's officers, agents, or employees. If the municipality maintains a nuisance, regardless of its origin, and such nuisance is the proximate cause of the injury, the municipality should be liable in damages, and the defense of governmental immunity should not be available to it.

GRADY, C. J., concurs with SCHWELLENBACH, J.

