[No. 34290. Department One. May 2, 1958.]

THE PORT OF SEATTLE, *Respondent*, v. INTERNATIONAL LONG-SHOREMEN'S AND WAREHOUSEMEN'S UNION *et al.*, *Appellants.*[1]

*Zabel & Poth*, for appellants.

*Bogle, Bogle & Gates, Edward G. Dobrin, J. Tyler Hull,* and *Donald McMullen*, for respondent.

FINLEY, J.—On January 18, 1957, the port of Seattle filed an action to enjoin the defendant unions, their members and representatives, from striking and picketing its terminal and warehouse operations. On January 19th, the

[1] Reported in 324 P. (2d) 1099.

trial court issued a temporary restraining order pending a hearing set for January 22nd. After the hearing, the trial court issued a temporary injunction, and the defendants thereupon appealed.

A brief statement of the facts giving rise to this action will be sufficient to clarify the issue involved.

The port of Seattle (hereafter referred to as the port or respondent) was established pursuant to RCW 53. The purposes and functions of port districts are prescribed in general by RCW 53.04.010, as follows:

". . . the acquisition, construction, maintenance, operation, development, and regulation of a system of harbor improvements and rail and water transfer and terminal facilities therein . . ."

The port is a political subdivision of the state and a municipal corporation. RCW 53.04.060; *Anderson v. Port of Seattle* (1956), 49 Wn. (2d) 528, 304 P. (2d) 705; *Woody v. Port of Seattle* (1922), 118 Wash. 163, 203 Pac. 59; *State ex rel. Port of Seattle v. Wardall* (1919), 107 Wash. 606, 183 Pac. 67; *State ex rel. Port of Seattle v. Superior Court* (1916), 93 Wash. 267, 160 Pac. 755.

The International Longshoremen's & Warehousemen's Union, Local 9 (hereafter referred to as the union or appellant), is a labor organization affiliated with the International Longshoremen's & Warehousemen's Union, an international union. The union maintains a hiring hall, through which men are supplied to the industry when needed. The private operators of port and dock facilities in the Seattle area have entered into collective bargaining agreements with the union for the various categories of workmen within the union's jurisdiction.

The port employs an average of 350 employees in connection with the operation and maintenance of its waterfront facilities and terminals. Of this number, 24 are members of the union. The port uses the facilities of the union's hiring hall, but it has consistently refused to enter into a collective bargaining agreement with the union.

The present dispute resulted from union demands for (1) higher hourly wages for certain of its members who are employed by the port, and (2) increased vacation benefits for all of its members employed by the port. When the port refused to acquiesce to its demands, the union members employed by the port went on strike. They began peaceful picketing of the affected facilities on January 18, 1957. The picketing resulted in stopping operations of the port's waterfront facilities.

█ It is an established rule in this jurisdiction that one who seeks relief by temporary or permanent injunction must show (1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him. *LeMaine v. Seals* (1955), 47 Wn. (2d) 259, 287 P. (2d) 305; *King County v. Port of Seattle* (1950), 37 Wn. (2d) 338, 223 P. (2d) 834. In its order granting the temporary injunction, the trial court concluded that the strike and picketing were unlawful; that, by reason thereof, the port was suffering "immediate, substantial and irreparable loss and damage."

Appellants contend that the trial court erred in concluding that the strike was unlawful, and that the trial court abused its discretion in granting the injunction.

Two broad and basic principles are involved in this case: (1) the right of organized labor to employ the strike and picketing as a weapon in order to maintain an effective bargaining position; (2) the general immunity of government from a strike. It is the position of the respondent that the government's immunity from a strike is unqualifiedly paramount. The appellants, on the other hand, assert that governmental immunity in the field of labor relations is subject to qualification; that the right of labor to strike is paramount if the municipal function involved is "proprietary" in nature.

The policy of characterizing the functions of government as (a) proprietary or (b) governmental was devel-

oped in the common-law courts as a means of mitigating manifest injustices resulting from an unqualified application of the doctrine of sovereign immunity to personal injury actions. *Los Angeles v. Los Angeles Bldg. & Constr. Trades Council* (1949), 94 Cal. App. (2d) 36, 210 P. (2d) 305; *New York City Transit Authority v. Loos* (1956), 2 Misc. (2d) 733, 154 N. Y. S. (2d) 209. With the increasing enactment of statutes making governmental units liable for the negligence of their employees, the influence of the above-mentioned shadowy and ill-defined legal terms or judicial concepts is waning.[2] In any event, there is unquestionably no logical basis for the application of those terms in the particular area of the law with which we are concerned in the case at bar. *Los Angeles v. Los Angeles Bldg. & Constr. Trades Council, supra*; *New York City Transit Authority v. Loos, supra.*

With respect to municipal immunity from strikes, the Connecticut supreme court of errors, in *Norwalk Teachers' Ass'n v. Board of Education* (1951), 138 Conn. 269, 83 A. (2d) 482, 31 A. L. R. (2d) 1133, had this to say:

"President Franklin D. Roosevelt said in a letter to the president of the National Federation of Federal Employees on August 16, 1937: 'Particularly, I want to emphasize my conviction that militant tactics have no place in the functions of any organization of Government employees. . . . [A] strike of public employees manifests nothing less than an intent on their part to prevent or obstruct the operations of Government until their demands are satisfied. Such action, looking toward the paralysis of Government by those

---

[2] Recently, the Florida supreme court (*Hargrove v. Town of Cocoa Beach* (1957), 96 So. (2d) 130), questioned the orthodox practice of defining or attempting to distinguish between (a) proprietary and (b) governmental functions.

In what appears to the writer of the opinion in the case at bar to be an enlightened and forthright judicial re-evaluation and restatement of the law (prepared for the court by Justice Thornal), the Florida court abrogated the doctrine of municipal immunity for injury caused by the negligence of a municipal employee while acting within the scope of employment. In doing so, the court emphasized the judicial origin of the doctrine, saying specifically, "We can see no necessity for insisting on legislative action in a matter which the courts themselves originated."

who have sworn to support it, is unthinkable and intolerable.' As the author of the article cited says, 'The above statement by President Roosevelt, who certainly was no enemy of labor unions, epitomizes the answer to the problem. It seems to be axiomatic.'"

■ Appellants do not specifically rely on the so-called little Norris-LaGuardia act (RCW 49.32.010-49.32.100) for the obvious reason that it is a well-established rule of statutory construction that general legislation is inapplicable to the state or its political subdivisions, unless the statute expressly applies to them, or unless they must be included by necessary implication. *State ex rel. Thielicke v. Superior Court* (1941), 9 Wn. (2d) 309, 114 P. (2d) 1001; *United States v. United Mine Workers* (1947), 330 U. S. 258, 91 L. Ed. 884, 67 S. Ct. 677; *Manchester v. Manchester Teachers Guild* (1957), 100 N. H. 507, 131 A. (2d) 59.

Appellants vigorously contend that the instant case is controlled by the reasoning in *Christie v. Port of Olympia* (1947), 27 Wn. (2d) 534, 179 P. (2d) 294, as is evidenced by the decision of the Arizona supreme court in *Local 266, International Brotherhood of Electrical Workers v. Salt River Project Agricultural Imp. & Power Dist.* (1954), 78 Ariz. 30, 275 P. (2d) 393, which cites the *Christie* case, *supra*.

In the *Christie* case, this court decided that a port district has the power to make contracts for the payment of deferred compensation to longshoremen. At least inferentially, that case stands for the proposition that a port district has the power to enter into collective bargaining agreements. See *Norwalk Teachers' Ass'n v. Board of Education, supra;* and the *Salt River Project* case, *supra*. However, we believe that there is a difference, perhaps small but nevertheless significant, between the power of a port district to contract and the power of the employees of the port district to strike and to picket. *Norwalk Teachers' Ass'n v. Board of Education, supra; Manchester v. Manchester Teachers Guild, supra;* and compare *Civil Service Forum v. New York City Transit Authority* (1957), 163

N. Y. S. (2d) 476, with *New York City Transit Authority v. Loos* (1956), 154 N. Y. S. (2d) 209; and see 31 A. L. R. (2d) 1142.

In the *Salt River Project* case, *supra*, the Arizona supreme court squarely holds that the employees of an agricultural improvement and power district (a municipal corporation) have the right (1) to bargain collectively with the district and (2) to strike and picket as a method of obtaining a collective bargaining agreement. We are not persuaded by the reasoning of the Arizona court, however, as it rests its decision relative to the right to strike on the so-called *proprietary nature* of the improvement district's functions.

■ In our view, the primary reason for the modern day vitality of the principle that the government is immune to strikes is to safeguard and protect public health and safety. The public health and safety are not the basis for distinguishing between governmental and proprietary functions of a municipality; rather, the primary consideration is to determine whether the municipal corporation is acting as a representative of the state in the particular capacity or is merely seeking to further its own corporate ends. *Hagerman v. Seattle* (1937), 189 Wash. 694, 66 P. (2d) 1152, 110 A. L. R. 1110; *Hutton v. Martin* (1953), 41 Wn. (2d) 780, 252 P. (2d) 581. The fact that the public health and safety are not the determining factor is readily apparent when we see that the following are classified as proprietary: municipal water systems (*Russell v. Grandview* (1951), 39 Wn. (2d) 551, 236 P. (2d) 1061); municipal sewer systems (*Hayes v. Vancouver* (1911), 61 Wash. 536, 112 Pac. 498); municipal electric plants (*Abrams v. Seattle* (1910), 60 Wash. 356, 111 Pac. 168); and municipal garbage collection systems (*Hutton v. Martin, supra*); whereas, the following are characterized as governmental: municipal playground (*Stuver v. Auburn* (1932), 171 Wash. 76, 17 P. (2d) 614); municipal swimming pool (*Mola v. Metropolitan Park Dist. of Tacoma* (1935), 181 Wash. 177, 42 P. (2d) 435); municipal park (*Kilbourn v. Seattle* (1953),

43 Wn. (2d) 373, 261 P. (2d) 407); and a municipal art museum (*Parr v. Birmingham* (1955), 264 Ala. 224, 85 So. (2d) 888).

We are conscious of the fact that the common law may change with the changes in "the institutions and condition of society in this state" (see RCW 4.04.010), but this court cannot readily explore and ascertain accurately the effect on the public health and safety of a strike against a particular municipal function. It would be impossible to do so accurately on the state of the record before us in this case. The legislature is better equipped to investigate such matters extensively and fully with respect to each municipal function; and, through its general *modus operandi*, it can determine more appropriately the public policy of this state in this evolving field of conflicting interests and social regulation and control. Absent legislation under the circumstances here involved, we feel compelled to hold that the right to strike is subordinate to the port's immunity therefrom. It logically follows that the strike in this case was inappropriate. The resultant damage to the port being substantial, the trial judge did not abuse his discretion in granting the injunction. *Los Angeles v. Los Angeles Bldg. & Constr. Trades Council, supra; Manchester v. Manchester Teachers Guild, supra.*

The judgment of the trial court should be affirmed. It is so ordered.

HILL, C. J., MALLERY, WEAVER, and OTT, JJ., concur.