[Nos. 22079, 22080. *En Banc.* January 9, 1931.]

STEWART LUMBER COMPANY, *Appellant*, v. UNIQUE HOME BUILDERS, INCORPORATED, *et al.,* *Respondents.*

T. B. MURPHY, *Plaintiff*, v. UNIQUE HOME BUILDERS, INCORPORATED, *Defendant.*

STEWART LUMBER COMPANY, *Appellant*, v. ANNA M. SCHROEDER *et al., Respondents.*[1]

[1]Reported in 294 Pac. 988.

*Allen, Froude, Hilen & Askren,* for appellant.

*Elias A. Wright* and *Sam A. Wright (Frank Harrington,* of counsel), for respondent Schroeder.

*James R. Gates,* for respondent Warner.

*Louis Shela,* for respondents ᑕornwall.

*Bayley & Croson (Burton J. Wheelon,* of counsel), for respondent Continental Mortgage & Loan Co.

MITCHELL, C. J. —These are appeals by the Stewart Lumber Company, a corporation, from judgments in two actions, consolidated for trial and involving substantially the same facts and the same issues. The judgments denied foreclosure of materialmen's liens claimed by the appellant. The Unique Home Builders, Inc., whose president and general manager was H. J. Armitage, as owner, built a group of thirteen houses, procuring the lumber, plastering material and hardware for the houses from the appellant.

The appellant, claiming that such material had not been fully paid for, filed notices of liens on July 9, 1927, for the balance alleged to be due. One of the liens, in the sum of $416.93 and interest and costs, was against the property known as 1022 E. 97th street, in or near Seattle; which property, at the time of suit and trial, had been sold to, and was owned by, defendant Jennie E. Warner, who, prior to the filing of the lien notice, had purchased it from one R. T. Green, who had acquired it from the Unique Home Builders, Inc. At the time of the trial, this property was subject to a first mortgage, held by the respondent Continental Mortgage and Loan Company, which, it was stipulated, was inferior to appellant's notice of lien, if the latter was held to be a valid lien.

The other lien involved in these cases, in the sum of $389.22 and interest and costs, was against property

known as 1050 E. 97th street, which property had been purchased by respondent Anna M. Schroeder from the Unique Home Builders, Inc., prior to the filing of appellant's notice of lien.

On April 30, 1927, the appellant, by John J. Gauss, gave to Unique Home Builders, Inc., a receipt for eight hundred and fifty dollars stating that the money received was ''balance due in full for lumber, plaster and hardware'' in five designated houses, including these two, Nos. 1022 and 1050. It appears that the money received was greater in amount than the amount due on these two houses, but not equal to the total amount due on all five of the houses mentioned in the receipt. In this respect, however, it may be mentioned that neither one of the respondents, purchasers of the two houses involved, knew, at the time of their respective purchases, the amount of material claimed to have been furnished by the appellant in the construction of any of the houses except the one the purchaser was buying.

There was considerable controversy concerning the receipt of April 30, 1927. It appears that, in a book of receipts kept by the appellant in its office, Mr. Gauss, on that same day, made out and signed a purported duplicate receipt to the Unique Home Builders, Inc., for the same amount as that contained in the receipt he had delivered to the Unique Home Builders, Inc.; but, in the copy in the office (which was on a printed form different from that delivered to the Unique Home Builders, Inc.), no statement was made as to how the money received had been, or was to be, applied. There is no claim, as we understand, that the receipt kept by the appellant in its office was ever called to the attention of either of the respondents. The one delivered to the Unique Home Builders, Inc., was the important one.

On behalf of the appellant, some contention is made that John J. Gauss, who signed and gave the receipt, was only a collector, without power to bind the appellant by giving a receipt in full. On the contrary, respondents contend that Gauss was both collector and credit manager of the appellant, with power to give such a receipt. We do not understand that appellant contends Gauss was without power to give such a receipt, if it be that at that time he was credit manager for the appellant.

The questions of fact, therefore, are: Was Mr. Gauss credit manager of appellant on April 30, 1927, and did he sign the receipt? Mr. Armitage, who made the payment to Mr. Gauss, testified that he had been having business transactions right along with appellant and that, whenever there were dealings with regard to credits, Mr. Young, the general manager of the appellant, or anyone in the Stewart Lumber Company, always referred him to Mr. Gauss. He further testified that Mr. Gauss signed the receipt, as it appears in evidence, and gave it to him on the date it bears and that, at that time, he understood Mr. Gauss was credit manager of the appellant. Also Mr. J. W. Young, general manager of the appellant corporation, testified that the signature to the receipt delivered to the Unique Home Builders, Inc., was written by Mr. Gauss, with whose handwriting he was familiar, and that, on the date of the instrument, Mr. Gauss was credit manager of the appellant. This testimony, together with other facts and circumstances which need not be set out, fully satisfied the trial judge as to those facts, and with those findings we are entirely satisfied.

On the date of the receipt, the Unique Home Builders, Inc., was indebted to appellant on account of material furnished for houses other than those included in the receipt; and, also, as it appears, owed a balance

due on an old account incurred prior to the building of this group of houses; and, it appears, the credit represented by the amount of the receipt was, without the knowledge of the Unique Home Builders, Inc., placed on the old account by the appellant. The appellant was pressing the Unique Home Builders, Inc., for payments. It appears that its chances to make payment were to sell these houses and apply the amounts received on the account due the appellant, and that, for that purpose, collections were being made as fast as possible.

Mr. Green had purchased house No. 1022, on which he had already made some payments, and on which he was to make final payment in the sum of one thousand dollars on or about May 4, 1927; so that, on giving the receipt on April 30, 1927, Mr. Gauss took the Unique Home Builders, Inc., check post-dated May 4, 1927, understanding it would be met by the Green payment. Green did not pay until May 13, on which date he gave his check to the Unique Home Builders, Inc., in the sum of one thousand dollars, balance due by him on the purchase price of house No. 1022.

There was convincing testimony that, a few days before Mr. Green made the payment a Mr. Leighton, the new credit manager of the appellant, knowing the circumstances under which the eight hundred and fifty dollar post-dated check had been given, and knowing that it was to be met by the payment Mr. Green was to make to the Unique Home Builders, Inc., asked Mr. Green to make a deposit in the bank on which the post-dated check was drawn for the purpose of meeting that check. Mr. Green told him he would make such deposit within a few days and specifically asked Mr. Leighton to clear his house, which Mr. Leighton promised he would do. As stated, Mr. Green thereafter made a deposit in the sum of one thousand dollars to

the credit of the Unique Home Builders, Inc., in its bank, out of which the post-dated check of eight hundred and fifty dollars, held by the appellant, was paid.

The judgment denying foreclosure of the lien on property No. 1022 was right, not only because of appellant's outstanding receipt in full, but, also, as a just application of the doctrine of equitable estoppel. On this last proposition, the case is similar to *Nelson & Castrup v. Culver,* 94 Wash. 548, 162 Pac. 978. In that case, the property owner, B. W. Culver, contracted with one Victor R. Furness for the erection of a house, in the construction of which material was furnished by Nelson & Castrup. About the time the house was completed, Furness wanted his pay, which Culver refused without the consent of the materialmen. Furness thereupon saw the materialmen and gave them a check for the balance due and received a receipt acknowledging payment in full. Upon Furness presenting the receipt, Culver spoke with Nelson & Castrup about the matter, and then paid the contractor Furness the balance due him. The check that Furness gave at the time of taking Nelson & Castrup's receipt in full was not paid by the bank on which it was drawn because of not sufficient funds to meet it.

Nelson & Castrup then undertook to foreclose a lien on the property for the material they had furnished; and, in the action, claimed they had not, because of the provisions of a certain section of the code to which they called attention, waived their lien. The judgment of the trial court was against them, and on appeal, this court, favoring the owner's defense of equitable estoppel, decided that the statute cited by the appellants was not controlling, and further said:

"A number of cases are also cited upon the question of the waiver of a lien, but the question in the present case is not, as we view it, whether there was a waiver

of the lien by the appellants, but whether they are estopped from asserting the lien.''

The holding was an affirmance of the judgment appealed from, and in favor of the defense of estoppel, saying:

''To permit the lien to be foreclosed under such circumstances would, in effect, work a fraud upon the respondents.''.

Certainly, the doctrine of that case should be applied in the present one, where the materialman not only gave a receipt in full, but actually received pay which was furnished, primarily, as appellant knew, by a purchaser of the property with a promise on the part of the appellant, through its credit manager, that the property would be free from its claim of lien.

■ For essentially the same reasons, the judgment denying foreclosure of the lien on property No. 1050 must be sustained. Before Anna M. Schroeder purchased this property, the appellant, in consideration of a post-dated check that was subsequently paid, issued and delivered a receipt in full for all material it had furnished for this building. That constituted proof of payment which was pled as a defense by Anna M. Schroeder. Still further, if need be, this receipt was used by the Unique Home Builders, Inc., in making the sale of the property to Anna M. Schroeder, who, in making the purchase, insisted that the property should be clear. This receipt and all others for material and labor in the building were procured and exhibited to her, thereby causing her, acting in good faith, to change her position by the payment of a considerable amount of money. In equity and good conscience, the appellant is estopped from asserting a right of lien against the property sold, under the circumstances, else a fraud would be worked upon Anna M. Schroeder. Some of many cases that might be

cited applying this doctrine under circumstances essentially similar to those in the present case are: *Nelson & Castrup v. Culver*, 94 Wash. 548, 162 Pac. 978; *Rowe v. James*, 71 Wash. 267, 128 Pac. 539; *Maxwell v. Dimond*, 83 Wash. 30, 145 Pac. 77; *Brick Co. v. Sadring*, 68 Mo. App. 15; *West v. Pinkston*, 44 Utah 123, 138 Pac. 1152.

At the trial John J. Gauss, subpoenaed as a witness by one of the parties other than the appellant, after appearing in the court room, left without permission before the trial was over and without being called to testify. Some days later, after the cases had been decided orally, but before either findings of fact or decree were signed, upon Mr. Gauss becoming available, counsel for the appellant moved that the cases be reopened to permit counsel to examine Mr. Gauss. The motion was denied, which ruling, together with the denial of appellant's motions for new trials involving the same matter, have been presented as assignments of error, appellant claiming abuse of discretion on the part of the trial judge. In asking that the cases be reopened, no offer of proof was made. It is claimed, however, that it was clear counsel desired to ask Mr. Gauss about the receipt, with respect to whether the one he signed contained any reference to particular houses or numbers. So considered, it is to be remembered that, among other testimony that had been given, Mr. Young testified positively to the signature of Mr. Gauss on the receipt that was in full and that mentioned the houses; and Mr. Armitage testified positively that the receipt was written that way when Mr. Gauss signed it. There were other facts and circumstances strongly corroborating this testimony, with all of which the trial judge who heard the testimony and saw the witnesses specifically expressed entire satisfaction.

If there was any question, within the discretion of the trial judge, about the propriety of denying the motion to reopen the cases, that question was thoroughly dissipated by the affidavit of Mr. Gauss, presented by the appellant in support of its motions for new trials. At the time of making the affidavit, the receipt in question was on file in the cases and easy of examination by Mr. Gauss; and yet, in his affidavit, he did not pretend to deny his signature to the receipt in question, nor that he was credit manager of the appellant at the time the receipt was given, but only that it was his

". . . present belief and recollection, that when he signed and gave the receipt to Mr. Armitage it did not describe any lot or house number."

But the positive testimony of others, and the circumstances surrounding the transaction, were convincing the other way; hence the trial judge denied the motions for new trials. There was, in our opinion, no abuse of discretion in refusing to reopen the cases for further evidence, nor was there any error in denying the motions for new trials.

Affirmed, as to both cases.

HOLCOMB, TOLMAN, MAIN, BEALS, PARKER, MILLARD, and FULLERTON, JJ., concur.